

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JOSE LUIS MORENO, | § | No. 08-18-00179-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | County Court at Law No. 2 |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC# 20170C06110) |
| | § | |

## **O P I N I O N**

A jury convicted Appellant, Jose Luis Moreno, for burglary of a vehicle. In this appeal from his conviction, he argues in three issues that his confession to police was inadmissible because it was not knowingly, intelligently, and voluntarily made and that the evidence was legally insufficient to prove he lacked consent to enter the victim's vehicle. We affirm.

## BACKGROUND

On April 16, 2017, El Paso Police Department Officer Gavidia was dispatched to a call regarding a burglary of a vehicle. Officer Gavidia met with the victim, Whitney, at the shelter for homeless females where she was staying, and the victim led the officer to her vehicle that was parked nearby. Whitney was scared, teary-eyed, and concerned that all her belongings were gone.

She listed the missing items to Officer Gavidia which included, among other possessions, her father's green beret hat and some plush animal toys.

The trunk of Whitney's car was partially opened, and the rear driver's-seat window was smashed. Broken glass was scattered inside the car and on the ground near the car door. A broken vase was also on the ground outside the car. Additionally, the glove compartment was open, and it appeared as though someone had been rummaging through the car. Whitney told Officer Gavidia that she did not know who broke into her car.

After speaking to Whitney and observing her car, Officer Gavidia called for a crime-scene officer to respond to the scene. At trial, Officer Gavidia testified that he would not have called for a crime-scene officer if these acts been done with Whitney's consent because the incident would then have only been in the nature of a civil dispute. A crime-scene officer arrived to take photos and check Whitney's car for fingerprints. The officer lifted three prints from the car, and after being sent to the latent print section of the El Paso Police Department, one of the lifted prints was identified as having been made by Moreno.

Over a week after the burglary, officers interviewed Moreno at the central police station, and after the officers advised him of his constitutional rights, Moreno gave a written statement. In his statement, Moreno acknowledged entering Whitney's car and taking items from inside:

> I remember getting into the car and looking to see what I could find. . . . I only took some soaps and body washes that were inside of the car but did not take anything else. . . . I told [the interviewing officer] that he got my fingerprints from the car because I opened the passenger door to get into the car and I also remember grabbing a vase that I thought was nice for my mother but noticed it was broken.

At the end of the State's case-in-chief, Moreno moved for a directed verdict on the basis that there was no evidence showing that he lacked consent to enter Whitney's car. The trial court

2

denied his motion.

The jury found Moreno guilty and assessed his punishment at 365-days' confinement and a $4,000 fine after a punishment phase in which the State admitted several judgments showing Moreno's prior convictions for, among other crimes, burglary of a habitation and robbery. The trial court sentenced Moreno in accordance with the jury's verdict, and Moreno timely filed his notice of appeal.

## DISCUSSION

### Issue One: Whether Moreno's Statement was Knowingly, Intelligently, and Voluntarily Made

In his first issue, Moreno argues that the trial court erred in ruling that his written statement was admissible following the court's hearing outside the jury's presence on the matter because the totality of the circumstances showed the statement was not voluntary. The State responds that the circumstances proven at the hearing show the trial court did not abuse its discretion in finding that Moreno knowingly, intelligently, and voluntarily waived his rights prior to giving his statement under both article 38.22 of the Code of Criminal Procedure and *Miranda v. Arizona*.[1]

### Underlying Facts

Moreno filed a motion to suppress his confession on the ground that he did not waive his rights knowingly, intelligently, and voluntarily. Before the State's case-in-chief, the trial court held a hearing outside the jury's presence to determine the admissibility of Moreno's written statement to police. El Paso Police Department Officer Villalobos testified that he and his partner met with Moreno at the central police station after Moreno had been brought there by other officers. Before speaking with Moreno, Officer Villalobos advised him of the following rights and admonishments

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

3

as Moreno also read them along from a *Miranda* card: (1) his right not to incriminate himself; (2) his right to an attorney; (3) his right to remain silent; (4) that anything he said could be used against him; (5) his right to have an attorney present before and during any questioning; (6) his right to have an attorney appointed to advise him before and during such questioning; and (7) his right to terminate the interview at any time. After being so informed, Moreno indicated that he understood his rights by signing and initialing each of the listed rights on the *Miranda* card and signing the bottom of it. Moreno then told the officers that he wanted to "come clean" and agreed to give a statement.

During the interview, one officer spoke to Moreno while the other officer typed what Moreno said. Once the written statement was prepared, the officers gave Moreno an opportunity to review it and make any additions, deletions, or changes to it. Moreno made no changes and instead signed the beginning and end of each paragraph of the statement to indicate that he did not want to make any changes to the contents. During the hearing, the trial court admitted both the *Miranda* card and Moreno's signed statement. Moreno's statement recited that he was informed of the rights about which Officer Villalobos advised him and recited, "I understand my rights and I hereby knowingly, intelligently, and voluntarily waive these rights."

Officer Villalobos testified that he did not threaten Moreno, promise him anything in exchange for his statement, or deny him any basic necessities such as a restroom, food, or cigarettes. The officers even brought Moreno some McDonald's hamburgers during the roughly two-hour interview. In addition, Moreno did not appear to be under the influence of alcohol or any narcotic drug. At the conclusion of the hearing, the trial court found that Moreno read and initialed the *Miranda* card, that Moreno was not under coercion or duress, that the officers even gave

4

Moreno something to eat, and that, ultimately, Moreno made his statement freely and voluntarily. The trial court ruled that Moreno's statement was admissible, and the issue was not relitigated during trial.

## *Standard of Review*

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). The trial court's fact findings are reviewed for an abuse of discretion. *Id*. We afford almost total deference to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an assessment of a witness's credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). But we review *de novo* the trial court's rulings on questions of law and mixed questions of law and fact that do not turn on evaluation of credibility and demeanor. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011).

If the trial court makes express findings of fact, we view the evidence in the light most favorable to its ruling and determine whether the evidence supports the findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Turrubiate*, 399 S.W.3d at 150.

## *Applicable Law*

### *i.    The Constellation of Rights under Article 38.22 and Miranda*

Article 38.22 of the Code of Criminal Procedure establishes the safeguards for securing the privilege against self-incrimination. *Joseph v. State*, 309 S.W.3d 20, 23 (Tex. Crim. App. 2010); *see also generally* TEX. CODE CRIM. PROC. ANN. art. 38.22. It provides that no written statement

made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown on the face of the statement that he received the following warnings: (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial; (2) any statement he makes may be used as evidence against him in court; (3) he has the right to have a lawyer present to advise him prior to and during any questioning; (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and (5) he has the right to terminate the interview at any time. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a)(1)-(5). Furthermore, the face of the statement must show that the accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived his rights. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(b). The warnings provided in Section 2(a) are virtually identical[2] to the *Miranda* warnings except that the warning that an accused "has the right to terminate the interview at any time," as set out in Section 2(a)(5), is not required by *Miranda*. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007).

### ii. The State's Burden to Show a Knowing, Intelligent, and Voluntary Waiver

The State has the burden of showing that a defendant knowingly, intelligently, and voluntarily waived his article 38.22 and *Miranda* rights. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(b); *Joseph*, 309 S.W.3d at 24; *Torres v. State*, 543 S.W.3d 404, 411 (Tex. App. – El Paso 2018, pet. ref'd). The State must prove waiver by a preponderance of the evidence. *See Joseph*, 309 S.W.3d at 24; *Torres*, 543 S.W.3d at 411.

---

[2] Because no issue is raised about the distinction between these rights, and because they are discussed together throughout briefing, we will refer to them here as "article 38.22/*Miranda* rights."

6

To evaluate whether a suspect knowingly, intelligently, and voluntarily waived his *Miranda* rights, we turn to the two-step standard outlined by the United States Supreme Court in *Moran v. Burbine*. *See Moran v. Burbine*, 475 U.S. 412, 421 (1986); *Joseph*, 309 S.W.3d at 25; *Torres*, 543 S.W.3d at 411. First, we determine whether the waiver was voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. *Moran*, 475 U.S. at 421; *Joseph*, 309 S.W.3d at 25; *Torres*, 543 S.W.3d at 411. Second, we determine whether the waiver was made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Moran*, 475 U.S. at 421; *Joseph*, 309 S.W.3d at 25; *Torres*, 543 S.W.3d at 411. Ultimately, we may conclude that a suspect's rights have been waived only if the "totality of the circumstances surrounding the interrogation" reveals both of the above. *Moran*, 475 U.S. at 421; *Joseph*, 309 S.W.3d at 25; *Torres*, 543 S.W.3d at 411.

### *Application*

#### i. *The First Step: Voluntariness*

Here, Officer Villalobos advised Moreno of his right not to incriminate himself, his right to an attorney, his right to remain silent, that anything he said could be used against him, his right to have an attorney present, his right to have an attorney appointed, and his right to terminate the interview at any time. Moreno indicated that he understood his rights by signing and initialing each of the listed rights on the *Miranda* card and signing the bottom of it. He then said he wanted to "come clean" and give a statement. Once the statement was prepared, the officers gave Moreno the opportunity to review it and make any desired changes to it, and Moreno signed each paragraph of the statement to indicate his assent to the contents. Furthermore, the officers afforded Moreno basic necessities and even brought him food during the roughly two-hour interview. The record

7

shows that no threats or promises were made to Moreno. Finally, the face of Moreno's written statement recited that he was informed of the rights about which Officer Villalobos advised him and that he voluntarily waived his rights.

The totality of these circumstances supports the trial court's findings that Moreno was not under coercion or duress and gave his statement voluntarily, and we hold that the trial court did not abuse its discretion in ruling that Moreno's waiver of rights was voluntary. *See Joseph*, 309 S.W.3d at 26 (holding that the defendant's statement was voluntary where a detective warned the defendant about his rights, where the defendant willingly participated in a six-hour interview, where at no time did the defendant request an attorney or ask that the interview be stopped, and where the record showed no evidence of intimidation, coercion, or undue promises by police); *Torres*, 543 S.W.3d at 411-12 (holding that the defendant's statement was voluntary where a detective warned him about his rights and explained that a waiver of the rights must be knowing, intelligent, and voluntary, where the defendant responded, "Yes[,]" when asked if he understood his rights, where the defendant did not request an attorney but instead proceeded to speak unfettered for approximately 50 minutes, where the defendant never asked that the interview be terminated or invoked his right to counsel, and where there was no evidence of intimidation, coercion, or pressure to elicit statements by police).

For his argument that the factual scenario in this case dictates that we must find his statement to be involuntarily made, Moreno cites to *Oursbourn v. State* in which the Court of Criminal Appeals listed eight fact scenarios involving the crucial element of police overreaching that led to statements being found involuntary in those scenarios. *See Oursbourn v. State*, 259 S.W.3d 159, 170-71 (Tex. Crim. App. 2008). However, as pointed out by the State, the facts shown

8

at the suppression hearing here are dissimilar to the factual scenarios described in *Oursbourn*. *Compare id.* (providing as examples of circumstances in which statements were found to be involuntary a situation where "the police officers held a gun to the head of the wounded suspect to extract a confession" and a situation where "the suspect was held incommunicado for three days with little food, and the confession was obtained when officers informed him that their chief was preparing to admit a lynch mob into the jail"). Comparing the facts in this case to the extreme sets of circumstances listed in *Oursbourn*, we are not persuaded that *Oursbourn* compels us to find that the trial court abused its discretion here.

### ii.     *The Second Step: Awareness*

As discussed in our analysis of the voluntariness of Moreno's statement, Officer Villalobos testified that he advised Moreno about his article 38.22/*Miranda* rights and that Moreno indicated he understood his rights by initialing each of the listed rights on the *Miranda* card and signing the bottom of it. Furthermore, Moreno did not appear to be under the influence of alcohol or any drug. And the face of Moreno's written statement recited his receipt of warnings about those rights and that he knowingly and intelligently waived those rights.

These circumstances support the trial court's findings that Moreno read and initialed the *Miranda* card, and we hold that the trial court did not abuse its discretion in ruling that Moreno's waiver of rights was done with the requisite awareness to make it knowing and intelligent. *See Joseph*, 309 S.W.3d at 27 (holding that the defendant's statement was made with full awareness of his rights and the consequences of abandoning them where the article 38.22/*Miranda* warnings were read to him and where, when asked if he understood his rights, he replied that he did and signed his name on a warning card); *Torres*, 543 S.W.3d at 412-14 (holding that the defendant's

9

statement was made with full awareness of his rights and the consequences of abandoning them where the article 38.22/*Miranda* warnings were read to him, where he affirmatively acknowledged that he understood his rights and proceeded to speak to the interviewing detective, and where, despite the defendant's statements that he had earlier consumed some beer along with 30 Xanax tablets, witnesses testified that the defendant did not appear to be under the influence of alcohol or any drug during the interview).

### *Conclusion*

The totality of the circumstances here provided a basis for the trial court's ruling that both steps of the *Moran v. Burbine* standard were met. *See Moran*, 475 U.S. at 421; *Joseph*, 309 S.W.3d at 25; *Torres*, 543 S.W.3d at 411. Therefore, the trial court did not err in admitting his written statement. *See Turrubiate*, 399 S.W.3d at 150 (observing that we must uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case). We thus overrule Moreno's first issue presented for review.

### *Issues Two and Three: Whether the Evidence was Legally Sufficient to Prove that Moreno Entered Whitney's Vehicle without Her Consent*

In his second issue, Moreno argues that the trial court erred in denying his motion for directed verdict based on the State's failure to prove that lacked consent to enter Whitney's car, and in his third issue, he similarly argues that the evidence was legally insufficient to sustain his conviction for the same reason. The crux of his argument in both issues is that the State failed to prove the sole element that he lacked the effective consent of the owner to enter the vehicle at issue where the State "failed to call the owner of the vehicle to testify to [the] issue of consent." In response, the State contends that it proved the lack-of-effective-consent element through circumstantial evidence.

We observe that appellate courts treat a point of error complaining about a trial court's failure to grant a directed verdict as a challenge to the legal sufficiency of the evidence. *See Williams v. State*, 937 S.W.3d 479, 482 (Tex. Crim. App. 1996); *Elias v. State*, No. 08-15-00057-CR, 2016 WL 6473055, at *2 (Tex. App. – El Paso Nov. 2, 2016, no pet.) (not designated for publication). And as both sides agree that Issues Two and Three involve the same claim and group them together in their briefing, we will likewise address the two issues together.

### *Standard of Review*

In reviewing the legal sufficiency of the evidence, we apply the standard set out in *Jackson v. Virginia*. *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under that standard, a reviewing court must consider all evidence in the light most favorable to the verdict and, in doing so, determine whether a rational justification exists for the jury's finding of guilt beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 894-95. The trier of fact is the sole judge of the weight and credibility of the evidence, and we must presume that the fact finder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04; *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Thus, we are not permitted to reevaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

In reviewing the legal sufficiency of the evidence, we treat direct and circumstantial evidence equally. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence is "direct proof of a secondary fact which, by logical inference, demonstrates the ultimate fact to be proven." *Taylor v. State*, 684 S.W.2d 682, 684 (Tex. Crim. App. 1984). Circumstantial

11

evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

### *Applicable Law*

A person commits burglary of a vehicle if he: (1) without the effective consent of the owner; (2) breaks into or enters a vehicle or any part of a vehicle; and (3) intends to commit any felony or theft. TEX. PENAL CODE ANN. § 30.04(a). Effective consent is defined as assent in fact, whether express or apparent, and includes assent by a person legally authorized to act for the owner. *Mims v. State*, 434 S.W.3d 265, 273 (Tex. App. – Houston [1st Dist.] 2014, no pet.); *see also* TEX. PENAL CODE ANN. §§ 1.07(a)(11), (19), 31.01(3).

The State does not need to present direct testimonial evidence from an owner to establish the owner's lack of consent, and the State may instead prove lack of consent through circumstantial evidence. *See, e.g.*, *Taylor v. State*, 508 S.W.2d 393, 397 (Tex. Crim. App. 1974); *Alex v. State*, 483 S.W.3d 226, 229 (Tex. App. – Texarkana 2016, pet. ref'd); *Lee v. State*, No. C14-90-00687-CR, 1993 WL 81651, at *2 (Tex. App. – Houston [14th Dist.] Mar. 25, 1993, no pet.) (not designated for publication). For example, our sister courts have held that sufficient circumstantial proof of lack of consent to enter an area was shown through evidence that a defendant gained entry to an area by breaking a window and that the defendant took items belonging to another from inside the area. *See Alex*, 483 S.W.3d at 229-30 (holding that a fair and reasonable inference from the evidence was that the defendant – a recently-terminated, former Jack in the Box employee – entered the restaurant without the owner's alleged consent, even though no witness specifically

12

testified to a lack of consent, where: (1) the restaurant was closed for business at the time of the burglary; (2) the defendant gained entry by smashing a window with a piece of concrete and crawling through the broken window; and (3) the defendant took several hundred dollars from the restaurant's safe); *Lee*, 1993 WL 81651, at *1-2 (holding that there was ample evidence of the owner's lack of consent to enter a store, even though the owner was unavailable to testify at trial, where: (1) the store was closed for business at the time of the burglary; (2) the defendant destroyed the glass front door of the store and entered; (3) the defendant took cartons of cigarettes from the store; (4) upon being confronted by a security guard at the scene, the defendant fled; and (5) the store's loss prevention manager testified that nobody had permission to break into the store). In addition, this Court has held that lack of consent to enter an area can be shown circumstantially by evidence that a victim did not know who gained entry to the area and that the victim expressed concern about the entry. *See Price v. State*, No. 08-01-00073-CR, 2002 WL 471343, at *4 (Tex. App. – El Paso Mar. 28, 2002, pet. ref'd) (not designated for publication) (holding that the evidence was legally sufficient to prove lack of consent to enter the victim's home, even though the State never asked the victim if the defendant's entry into her home and removal of property from it were without her consent, where: (1) the victim was angry upon discovering what had happened; and (2) the victim conveyed her confusion about who had entered her home).

### *Application*

Although candidly acknowledging the deferential standard of review that we must apply, Moreno nonetheless asserts that the State's fatal error in this case was its failure to have Whitney testify to a lack of consent to enter her car and that there is nothing to circumstantially fill in this gap in the State's evidence. However, we believe the record provides ample circumstantial

13

evidence allowing the jury to make a fair and reasonable inference that Moreno lacked Whitney's consent to enter her car.

Here, one of the car's windows was smashed, leaving broken glass scattered both inside and outside the car. The trunk was partially open, the glove compartment was open, the car appeared as though someone had been rummaging through it, and a broken vase was on the ground outside the car. In Moreno's statement, he admitted entering Whitney's car and taking items from inside. These facts provide for a fair and reasonable inference that Moreno gained entry to Whitney's car by breaking a car window and then took items belonging to her from inside her car, and the jury therefore had a rational basis for finding that the State proved the element of a lack of effective consent to enter Whitney's car. *See Alex*, 483 S.W.3d at 229-30; *Lee*, 1993 WL 81651, at *1-2.

Furthermore, additional circumstantial evidence showed that Whitney had no idea who broke into her car, Whitney was scared, teary-eyed, and concerned about the burglary, and Whitney's belongings, consisting of her father's green beret hat and some plush animals, were gone. Officer Gavidia also testified that he would not have proceeded to request a crime-scene officer if someone had entered Whitney's car with her consent. Based on these additional facts showing that the victim did not know who entered her car and that the victim was concerned about the entry, the jury was afforded with another independent basis for finding that the State proved the lack-of-effective-consent element. *See Price*, 2002 WL 471343, at *4.

Thus, we hold that the evidence was legally sufficient to prove that Moreno lacked Whitney's effective consent to enter her vehicle. So holding, we overrule Moreno's second and third issues presented for review.

**CONCLUSION**

The trial court's judgment is affirmed.


GINA M. PALAFOX, Justice

December 4, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)