**Tasaririshe ALEX, Appellant**

v.

**The STATE of Texas, Appellee**

No. 06–15–00054–CR

Court of Appeals of Texas, Texarkana.

Submitted September 11, 2015

Decided January 8, 2016

---

Ebb Mobley, Attorney at Law, Longview, TX, for appellant.

Zan Colson Brown, Assistant District Attorney, Longview, TX, for appellee.

Before Morriss, C.J., Moseley and Burgess, JJ.

## OPINION

Opinion by Justice Burgess

Tasaririshe Alex was convicted of burglary of a building in violation of Section 30.02 of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 30.02 (West 2011). Specifically, the State alleged that she broke into the Jack in the Box restaurant where she had previously worked and stole between $700.00 and $800.00 from the office safe. She was sentenced to serve two years' imprisonment and now appeals her conviction. Her sole ground of error is that the evidence is legally insufficient to prove that she entered the building without the effective consent of the owner. Because we find that the evidence is sufficient to prove that she did not have effective consent to enter the building, we affirm the conviction.

## I. Summary of the Facts

The burglary occurred after 1:00 a.m. on March 9, 2014, which was approximately one month after Alex's employment with Jack in the Box had been terminated. A video surveillance recording (recording) depicted glass shattering and a person with a ponytail entering the restaurant through the broken window. The recording further showed this person opening the office safe using a code and then leaving through the back door of the restaurant.

The restaurant's general manager, Francheska Ward, testified that between $700.00 and $800.00 was missing from the safe. By observing the burglar's ponytail, body type, and gait on the recording, Ward and other restaurant employees identified Alex as a potential suspect. Additionally, Alex was one of six people who knew the safe's entry code, and Ward testified that because she did not know how to change the code, it had not been changed after Alex's employment was terminated. Finally, the recording showed a white sport utility vehicle leaving the parking lot after the burglary, and Ward testi-

fied that Alex drove a White GMC Envoy when she worked at the restaurant.

The indictment alleged that Alex entered a building not open to the public "without the effective consent of Curtis Franklin, the owner thereof." Ward testified that Franklin was her "district manager." Ward stated, "[Franklin] comes in and just, you know, kind of makes sure I'm doing what I'm supposed to be doing." Yet, she also testified that she was "the person that's actually over this store." Specifically, Ward testified, "I do the hiring, the firing; I make the schedules; I do the truck orders; and I oversee all the employees, pretty much." Ward further testified that she had the authority to speak for Franklin, that she normally acted on behalf of the restaurant, and that she was not aware if Franklin had given Alex permission to enter the restaurant. Finally, Ward testified that no one has permission to enter the store after it has been closed and locked for the evening, that she gave no one permission to be in the store at that time on the day of the burglary, and that after an employee is fired, she does not have permission to be in the back area of the restaurant.

## II. Standard of Review

■ In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim.App.2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex.App.–Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App.2007)). We examine legal sufficiency under the direction of the *Brooks* opinion, while giv-

ing deference to the responsibility of the trier of fact "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App.2007) (citing *Jackson*, 443 U.S. at 318–19, 99 S.Ct. 2781). Legal sufficiency of the evidence is measured by the elements of the offense as defined by a "hypothetically correct jury charge." *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* at 240.

The Texas Penal Code defines the term "owner" as "a person who ... has ... possession of the property, whether lawful or not, or a greater right to possession of the property than the actor...." TEX. PENAL CODE ANN. § 1.07(a)(35)(A) (West Supp. 2015). "[O]wnership may be alleged in either the actual owner or a special owner." *Byrd v. State*, 336 S.W.3d 242, 251–52 (Tex.Crim.App.2011). The Texas Court of Criminal Appeals explained special ownership as follows:

> [I]f Dad owns a car and loans it to Daughter, and Defendant steals it from the shopping mall where Daughter parked it, the State could allege either Dad—the title or "actual owner"—or Daughter—the "special owner" who actually possessed the car at the time it was stolen—in its theft indictment. When an entity, such as a corporation, owns property, the traditional preferable practice had been to allege ownership in a natural person acting for the corporation. But ... under the current Penal Code, a corporation may both own and have actual possession of property. Thus, it is perfectly permissible, and

sometimes preferable, to now allege the corporation—Wal-Mart; for example—as the owner of the property and then call any agent or employee who holds a relevant position in the company to testify that the corporation did not give effective consent for a person to steal or shoplift its property.

*Id.* (footnote omitted) (citation omitted).

## III. Issue Presented

In this case, the State did not allege the name of the actual owner and then "call any agent or employee who holds a relevant position in the company to testify that the corporation did not give effective consent." *Id.* Rather, the State alleged that a special owner—District Manager Franklin—owned the building and then called a different special owner—Restaurant General Manager Ward—to testify that Alex did not have Franklin's consent to enter the building. Alex argues that because the State alleged Franklin was the owner, but only proved that Alex did not have Ward's consent to enter the building, the State failed to present legally sufficient evidence to prove that the entry was "without the effective consent of the owner" as required by Section 30.02 of the Penal Code. Essentially, Alex alleges that there is a fatal variance between the indictment and the evidence presented at trial.

## IV. Analysis

■ It is true that Franklin did not testify and that no witness specifically testified that Franklin did not give Alex consent to enter the restaurant. The only evidence nearing that mark was Ward's testimony that she was not aware if Franklin had given Alex permission to be in the store on the day of the burglary. Nevertheless, the State does not need to present direct evidence to establish the owner's lack of consent; rather, "proof of

lack of consent may be established through circumstantial evidence." *Hathorn v. State,* 848 S.W.2d 101, 107 (Tex.Crim.App. 1992) (citing *Taylor v. State,* 508 S.W.2d 393, 397 (Tex.Crim.App.1974)); *see also Jackson v. State,* 424 S.W.3d 140 (Tex. App.–Texarkana 2014, pet. ref'd).

In *Taylor v. State,* the Texas Court of Criminal Appeals held that circumstantial evidence was sufficient to prove that Taylor entered the victim's home without the owner's consent even though the owner failed to specifically state during his testimony that he had not consented to the entry. *Taylor v. State,* 508 S.W.2d 393, 397 (Tex.Crim.App.1974). The Court held that the following circumstantial evidence established lack of the owner's consent:

> As Mrs. Tallie Devereaux was preparing breakfast ..., she heard the front door bell ring. She looked through the blinds ... and saw the appellant.... Because she did not want to "take any chances" she did not answer the door. Instead, when the door bell ringing persisted, Mrs. Devereaux gathered up her two small children and went to her bedroom.... She ran and called the police at this point, and then telephoned her mother. While talking to her mother, she heard the back window being broken. Her mother told Mrs. Devereaux to "grab the kids and run into the bathroom and lock it up." This Mrs. Devereaux did. While in the bathroom[,] she heard footsteps and voices all over the house. The voices were gone in eight or ten minutes, and Mrs. Devereaux opened the bathroom door to find her bedroom ransacked, her purse rifled, and a television and stereo gone.

*Id.* at 396–97.

■ Here, the evidence established that Alex was a former Jack in the Box employee who had been terminated from the res-

taurant approximately one month before the burglary. The evidence also established that individuals whose employment with Jack in the Box has been terminated do not have consent to enter the restaurant while it is closed. Further, the evidence established that Alex gained entry to her former place of employment after it had closed for the evening by smashing a window with a piece of concrete and crawling through the broken window. Finally, the evidence established that once inside the building, Alex opened the restaurant's safe and took $700.00 to $800.00. A fair and reasonable inference from this evidence is that Alex entered the restaurant without Franklin's consent as alleged in the indictment. Consequently, from the evidence presented, a rational jury could have found that the elements necessary to prove the offense of burglary of a building beyond a reasonable doubt were present.

## V. Conclusion

Accordingly, we overrule Alex's point of error and affirm the trial court's judgment.