**Opinion issued March 12, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00261-CR

———————————

**THOMAS JOSEPH GAMELIN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Case No. 1563157**

---

## MEMORANDUM OPINION

The State charged Thomas Gamelin with burglary of a building not then open with the intent to commit theft, a state jail felony. *See* TEX. PENAL CODE § 30.02(a)(1), (c)(1). The charge also contained two punishment-enhancement paragraphs alleging that Gamelin had two prior felony convictions. Gamelin pleaded

not guilty to the charge and not true to the enhancement paragraphs, and he elected to have the trial court decide punishment.

Following trial, the jury found Gamelin guilty as charged. After hearing the punishment-phase evidence, the trial court found both enhancement paragraphs true and sentenced Gamelin to 20 years' confinement.

In a single issue, Gamelin contends that the evidence was legally insufficient to support the jury's finding because the jury heard no evidence that Gamelin lacked effective consent to enter the building. Finding the evidence sufficient, we affirm.

## BACKGROUND

Hurricane Harvey bore down on the Houston area in late August 2017. While the storm inundated the area, much of the city was impassable and most businesses were closed. The City imposed a nighttime curfew to keep people off the roads and prevent looting.

In the early morning hours of August 29, 2017, Houston Police Department Officer J. Pirela was working a 12-hour shift in northwest Houston, his regular patrol area. Early in his shift, Pirela received a radio dispatch alerting officers to individuals in two vans, one white and one black, who were seen trying to loot stores on North Shepherd Drive, not far from Pirela's patrol area.

Pirela's patrol route passed by a Walmart store near Silber Drive and Interstate 10. The store was closed because of the hurricane, and only management personnel

2

were reporting to work. The store's inside lights were off, and several hundred wooden pallets had been stacked as a makeshift barricade over the main entrance.

Pirela circled the store on the lookout for possible looters. On his third pass, he noticed that the barricade had been disturbed and several pallets were scattered on the ground. Pirela could see into the store through the gap in the pallets. He also noticed a white van with its tailgate open parked in front of the entrance. Pirela called for police backup units and waited nearby.

In-store surveillance video recorded at this time shows Gamelin picking up about 16 television sets from a display and leaving them at the front of the store near the entrance. Pirela saw Gamelin carrying large items out of the store and into the waiting van. When Gamelin saw the backup units arrive with their emergency lights activated, he ran back into the store and tried to hide. Officers found Gamelin in the garden shop and arrested him.

Matthew Lacobie, a Walmart asset protection officer assigned to that store, testified that the store was closed to the public and non-management employees the day the incident occurred. In its direct examination of Lacobie, the State asked:

Q. Now, who is Ruben Uribarri?
A. He is one of the assistant managers overnight.
Q. And so, he's one of the managers in charge of the store at nighttime; is that correct?
A. That's correct.

3

Q. And he would have been the manager in charge on August 29th, 2017, during the night shift hours?

A. Yes.

Q. And he is the person that has the right to tell people they can go into the store and not go in the store; is that correct?

A. That's correct.

Q. On August 29th, 2017, was Wal-Mart open to the public?

A. It was not.

Q. Why was it closed?

A. Due to Hurricane Harvey.

Q. Not only closed to the public, was it also open to employees or was it closed to employees?

A. It was closed to employees as well.

Q. And did anyone have permission to be in the store at any time during these hours during Hurricane Harvey?

A. No, they did not.

Q. And so, if anyone were to force their way inside of the Wal-Mart store, would they have permission to be in there?

A. No.

## DISCUSSION

### I.    Standard of Review and Applicable Law

In his sole issue, Gamelin contends that the trial court committed reversible error in entering a judgment of conviction based on the jury's finding because the evidence is legally insufficient to show that he lacked effective consent to enter the store. We review the legal sufficiency of the evidence by considering all the evidence in the light most favorable to the jury's verdict to determine whether any

4

factfinder "could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The reviewing court's role is that of a due process safeguard, ensuring only the rationality of the jury's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We defer to the jury's responsibility to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

In reviewing the legal sufficiency of the evidence, we treat direct and circumstantial evidence equally because circumstantial evidence is just as probative as direct evidence in establishing the guilt of a defendant. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence is "direct proof of a secondary fact which, by logical inference, demonstrates the ultimate fact to be proven." *Taylor v. State*, 684 S.W.2d 682, 684 (Tex. Crim. App. 1984). Circumstantial evidence alone can be enough to prove guilt beyond a reasonable doubt. *Clayton*, 235 S.W.3d at 778; *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

The jury is responsible for drawing reasonable inferences from basic facts to ultimate facts. *Clayton*, 235 S.W.3d at 778 (citing *Jackson*, 443 U.S. at 319). When the appellate record supports contradicting inferences, we presume that the jury resolved any such conflicts in favor of the verdict, even if not explicitly stated in the record. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012).

A person commits the offense of burglary of a building if, without the effective consent of the owner, the person "enters a habitation or a building . . . with intent to commit a felony, theft, or an assault." TEX. PENAL CODE § 30.02(a)(1); *see Morgan v. State*, 501 S.W.3d 84, 90 (Tex. Crim. App. 2016). "Effective consent is defined as assent in fact, whether express or apparent, and includes assent by a person legally authorized to act for the owner." *Mims v. State*, 434 S.W.3d 265, 273 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see* TEX. PENAL CODE §§ 1.07(a)(11), (19), 31.01(3). An "owner" is a person who has possession of a property or a greater right to possession of a property than the actor. TEX. PENAL CODE § 1.07(a)(35)(A); *Morgan*, 501 S.W.3d at 91–92. Whether an accused had effective consent to enter is "measured at the time of the accused's alleged criminal act." *Morgan*, 501 S.W.3d at 92.

## II.    Analysis

In contending that his conviction is not supported by legally sufficient evidence that he lacked effective consent, Gamelin points to the failure of Uribarri,

6

the Walmart night manager, to testify, and thus the lack of direct testimony that Uribarri did not give Gamelin consent to enter the Walmart. Gamelin relies on *Byrd v. State*, 336 S.W.3d 242 (Tex. Crim. App. 2011), as support for his argument that Uribarri's absence from trial means that the evidence is insufficient to show a lack of effective consent.

We find *Byrd* inapposite. There, the State's misdemeanor information alleged that the defendant unlawfully appropriated property from its owner, "Mike Morales." *Id.* at 244. At trial, though, the State did not mention or proffer any evidence concerning Morales or his connection to the Walmart from which the defendant took the property. *Id.* at 253.

The Court of Criminal Appeals concluded that the State, having alleged that Morales was the property owner, was required to prove that Morales had an ownership interest in the property but failed to do so. *Id.* at 257. As a result, the Court held that the evidence was legally insufficient to support Byrd's conviction and entered a judgment of acquittal. *Id.* at 258.

Here, in contrast, Asset Protection Officer Lacobie identified Uribarri, the owner alleged in the indictment, as the night manager who would have been in charge of the store when the incident occurred. Lacobie's testimony makes this case more analogous to *Alex v. State*, 483 S.W.3d 226 (Tex. App.—Texarkana 2016, pet. ref'd). The Texarkana court of appeals in *Alex* held that the evidence was legally

sufficient to support the jury's finding that the defendant lacked consent of the owner even though the chain restaurant's district manager—the owner alleged in the indictment—did not testify. *See id.* at 229–30. The general manager, who did testify, named the district manager and confirmed that he periodically came to the restaurant to make sure "I'm doing what I'm supposed to be doing." *Id.* at 228. As further support for a finding that the defendant lacked effective consent, the appellate court pointed to evidence that (1) the restaurant had terminated the defendant's employment a month before the burglary, (2) terminated employees do not have consent to enter the restaurant while it was closed, (3) the defendant entered the restaurant after it was closed by breaking a window, and (4) the defendant took several hundred dollars out of the restaurant's safe. *Id.* at 229–30.

As in *Alex*, the State in this case was not required to present Uribarri as a witness or otherwise adduce direct evidence that Gamelin entered the Walmart without the owner's consent. The evidence showed that because of the hurricane, the store was closed to the public. Lacobie confirmed that Uribarri was the assistant manager in charge of the store on the night of the incident and attested that no one, not even regular employees, had permission to be in the store that night.

The store's inside lights were off, and stacks of pallets had been fashioned into a barricade over the entrance. During his patrol, Officer Pirela noticed that some of the pallets he had previously seen stacked had fallen on the ground, a white van

8

was parked in front of the store entrance, and the gap left open by the fallen pallets led directly into the store. Pirela saw Gamelin emerge from the gap with store merchandise, which he loaded into the open van. When Gamelin realized that the police had discovered his activities, he ran into the store and tried to hide from the officers.

On this evidence, we conclude that a rational jury could have found beyond a reasonable doubt that Gamelin entered the store without the owner's effective consent. We therefore hold that the evidence is legally sufficient to support the jury's finding that Gamelin was guilty as charged.

## CONCLUSION

We affirm the trial court's judgment.

Gordon Goodman
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).