**Opinion filed December 31, 2020**



## In The

# Eleventh Court of Appeals

_____

## No. 11-18-00314-CR

_____

## JARAY TYRELL MIMS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 142nd District Court**

**Midland County, Texas**

**Trial Court Cause No. CR46716**

## MEMORANDUM OPINION

In a three-count indictment, the grand jury indicted Jaray Tyrell Mims, Appellant, in Count I for the offense of burglary of a habitation with the intent to commit aggravated assault with a deadly weapon upon Elishia Holloway. The grand jury indicted Appellant in the second count for the offense of aggravated assault with a deadly weapon upon Stanley Moss. Finally, in the third count of the indictment, the grand jury indicted Appellant for the offense of aggravated assault with a deadly weapon upon Dextric Hawkins. The jury found Appellant guilty on all three counts,

found the enhancement allegations to be true, and assessed his punishment on each count at confinement for twenty-five years. The trial court sentenced Appellant accordingly and ordered that the sentences were to run concurrently. We modify the trial court's judgments to delete the assessment of court-appointed attorney's fees as costs, but we otherwise affirm the judgments of the trial court.

Appellant presents us with five issues on appeal. In his first issue on appeal, Appellant claims that the evidence is insufficient to support his conviction for burglary of a habitation. Similarly, in his second issue on appeal, Appellant contends that the evidence is insufficient to support his conviction for aggravated assault with a deadly weapon. Appellant maintains, in his third issue on appeal, that he received ineffective assistance of counsel. In his fourth issue on appeal, Appellant argues that the trial court erred when it failed to grant Appellant's request for a mistrial. Finally, in his fifth issue on appeal, Appellant takes the position that the trial court erred when it assessed court-appointed attorney's fees against him.

In the early morning hours of January 21, 2016, a man identified as Appellant entered a house on Madison Street in Midland. The house was occupied by Dextric Hawkins, Litsandra Hawkins, Stanley Moss, Elishia Holloway, and Elishia's four children. The evidence shows that Appellant made his entry by knocking or kicking down a door to the house.

Prior to the date of this offense, Appellant and Elishia had been in a dating relationship for approximately seven years. Elishia and Appellant had three children together. The oldest of the children was six at the time of trial, and the other two, twins, were four years old at the time of trial. Elishia had one other child, her eldest, who was seven at the time of trial. Appellant was not the father of this child.

Appellant's relationship with Elishia ended in October 2015. Appellant and Elishia continued to communicate about matters that involved the children. That situation changed in December 2015 when Elishia refused to allow Appellant to visit

2

with the children; he became angry. Also, after the relationship ended, Elishia began seeing someone else, and Appellant was angry about that too. Appellant had texted Elishia and had also harassed the "guy" that Elishia was seeing.

About 1:30 a.m. on the date of the offense, Elishia left a friend's house to return to her own house. Elishia received a text from Appellant to the effect that she "was slick"—meaning that she "was supposed to be hiding it." The text apparently led her to believe that Appellant was following her.

When Elishia got home, she put a plate of food in the microwave, had a phone conversation with a friend, changed into her pajamas, and sat on the couch in the den where she and her four children normally slept. The children were asleep there.

Meanwhile, Varrick McDonald had been at a nearby location "getting high" and was walking by the Madison Street house where the shooting occurred. McDonald knew Appellant. Around 2:00 a.m., he saw Appellant drive into an alley behind the house. McDonald testified that another man was with Appellant. The two got out of Appellant's vehicle, went up to the house, and kicked the door in. McDonald heard Appellant say something like, "Y'all thought I was playing. I told you I was coming." McDonald heard three gunshots and ran away. As he ran away, he heard one more gunshot.

At the time that McDonald was watching this scenario begin to unfold, Elishia was eating and watching television when she heard a "kick on the back door" and "automatically knew that it was [Appellant]." Appellant's last text message to Elishia that morning came at 1:58 a.m.; Elishia heard the first kick on the door some ten minutes later.

When Elishia heard another kick, she got up and ran to the room where her great-uncle, Stanley Moss, slept; her then three-year-old daughter ran with her. As they ran to Moss's room, Elishia heard Appellant yelling, "Where's Poo?" "Poo" was Elishia's nickname. Then she heard six or seven shots being fired. Elishia first

3

heard a shot when Appellant "kicked in the door.  He came in shooting."  Elishia and her daughter hid in the closet in Moss's room.  Elishia testified that it was Appellant who was inside the house at the time of the offense.

Elishia's father, Dextric Hawkins, testified that he and his wife, Litsandra, were asleep in their room when he was awakened by a "hard hit on the door and some hollering and gunfire."  Dextric heard three "hits" like someone was kicking in the door.  Dextric heard Appellant say something like, "Where's Poo?"

Eventually, Appellant shot three holes in the door to the Hawkinses' room and knocked down the door.  Once inside the room, Appellant stood over Dextric, said "Yeah, bitch," and pulled the trigger twice.  Dextric testified, "How it missed me, I do not know."  Dextric then testified that Appellant left their room and "went and shot my uncle."

Dextric knew that the shooter was Appellant because he "[l]ooked me right in my eyes."  Dextric also had "no doubt" that the voice he heard was Appellant's voice.  Appellant had lived in Dextric's house before, and Dextric had known him for eleven years.  Appellant did not have permission to come into Dextric's home at the time of the offense.  The only person that Dextric saw was Appellant.

Without unduly prolonging this opinion, suffice it to say that Litsandra Hawkins basically confirmed Dextric's testimony.  She, too, identified Appellant as the shooter who was in the house.  Elishia testified that she knew when Appellant left because her oldest son started "running through the house going, 'My daddy gone, my daddy gone.'"  Dextric and Litsandra also testified to like statements that were made by Elishia's eldest son.

While Elishia was hiding in the closet, she called 9-1-1.  Several members of law enforcement came to the scene.  EMS personnel also came to the scene.  They transported Moss to the hospital to be treated for a gunshot wound.  By the time of trial, Moss had died from causes unrelated to the gunshot wound.

Marisa Payne, with the Midland Police Department Crime Scene Unit, took various photographs and gathered various pieces of evidence. Payne photographed the broken door that led into the house. She also photographed the broken door to the Hawkinses' bedroom. The photographs showed three bullet holes in the door. There were also bullet holes in a closet door located in the Hawkinses' bedroom. Photographs were also taken that reflected bullet holes in clothing inside the closet. Bullet holes were also found in a dresser in the bedroom. The bullet that left that bullet hole had traveled through the dresser into the wall behind the dresser. Payne also found three projectiles in the Hawkinses' bedroom. An additional bullet hole was found under the bed; the projectile apparently went through the subfloor and ended up under the house.

Payne also photographed some blood transfers on the floor outside Moss's door. She also photographed the bloody bed and room where Moss was lying when he was shot.

In Appellant's first two issues on appeal, he complains that the evidence is insufficient to support the verdicts. We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When we conduct a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the

sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

In his first issue on appeal, Appellant maintains first that the evidence is insufficient to prove the offense of burglary of a habitation because the State did not prove that Appellant entered the habitation without Dextric's effective consent. Appellant also asserts that the evidence was insufficient to prove that Elishia suffered any bodily injury or that Appellant threatened Elishia with imminent bodily injury "or threatened her at all." Therefore, Appellant argues, the evidence is insufficient to support his conviction under Count I of the indictment.

As charged in Count I of the indictment, a person commits the offense of burglary "if, without the effective consent of the owner, the person . . . enters a habitation . . . with intent to commit a felony, theft, or an assault." TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2019). A person commits an assault if the person "intentionally, knowingly, or recklessly causes bodily injury to another" or "intentionally or knowingly threatens another with imminent bodily injury." *Id.* § 22.01(a)(1), (2) (West Supp. 2020). The assault is classified as aggravated if the person commits assault and "causes serious bodily injury to another . . . or . . . uses or exhibits a deadly weapon during the commission of the assault." *Id.* § 22.02(a).

As to the matter of consent, "the testimony of an owner that she did not give permission to enter the habitation is 'sufficient to establish the absence of effective consent.'" *Morgan v. State*, 501 S.W.3d 84, 92 (Tex. Crim. App. 2016) (quoting *Ellett v. State*, 607 S.W.2d 545, 550 (Tex. Crim. App. 1980)). Further, "the State

6

does not need to present direct evidence to establish the owner's lack of consent; rather, 'proof of lack of consent may be established through circumstantial evidence.'" *Alex v. State*, 483 S.W.3d 226, 229 (Tex. App.—Texarkana 2016, pet. ref'd) (quoting *Hathorn v. State*, 848 S.W.2d 101, 107 (Tex. Crim. App. 1992)).

Here, Dextric testified that Appellant had lived at Dextric's house at one point and that Appellant was "always welcome to that home." After Elishia and Appellant ended their relationship, Appellant came to the house to visit the children. Elishia subsequently refused to let Appellant see the children, and he did not come to the house after that. Importantly, Dextric testified that, although Appellant had always been welcome in Dextric's home, on the day of the offense he did not give Appellant permission to be in his home and that Appellant was not welcome in his home "the way he came in." From this testimony, a rational jury could have concluded that Appellant did not have effective consent to be in the home on the night of the offense. Appellant's point as to consent is not well-taken.

We now address that part of Appellant's first issue on appeal in which he claims that the evidence is insufficient to show that Elishia suffered bodily injury or that Appellant "threaten[ed] her with imminent bodily injury." Because that evidence is lacking, Appellant contends, the evidence is insufficient to support his guilt under Count I of the indictment.

As previously stated, for a person to commit burglary as charged in Count I, the person must enter "*with intent to commit* a felony, theft, or an assault." PENAL § 30.02(a)(1) (emphasis added). It is clear from the statute that it is not necessary that a person actually suffer bodily injury or that a person actually be threatened with imminent bodily injury. A person acts intentionally "when it is his conscious objective or desire to engage in the conduct or cause the result." PENAL § 6.03(a) (West 2011). A person acts knowingly "when he is aware of the nature of his conduct or that the circumstances exist." *Id.* § 6.03(b).

7

Further, mental culpability must generally be inferred "from the circumstances under which the prohibited act occurred." *Knight v. State*, 406 S.W.3d 578, 587 (Tex. App.—Eastland 2013, pet. ref'd).

At trial, Elishia testified that, at around two o'clock in the morning on the day of the offense, she heard a kick at the backdoor and a voice that she recognized as Appellant's yelling, "Where's Poo?" She immediately thereafter heard shots fired. Appellant then fired additional shots as he went from room to room in the house. We do not believe that it is unreasonable that a rational jury would find that these actions, coupled with evidence that Elishia had exchanged text messages with Appellant only minutes before in which he refused to leave her alone, would show that Appellant had the intent to commit the offense of aggravated assault with a deadly weapon against Elishia by either threatening her with imminent bodily harm or causing her bodily injury. Thus, we find that the evidence was sufficient to support Appellant's conviction of burglary of a habitation. We overrule Appellant's first issue.

Next, we will discuss Appellant's claim that the evidence is insufficient to support his conviction for aggravated assault against Moss. We will review this contention under the same standards of review as we did in Appellant's first issue on appeal. Further, in our discussion of Issue One, we have set out the statutory requirements for proof of aggravated assault, and we need not repeat them here.

In his second issue on appeal, Appellant maintains that, "[o]ther than the assault on Dextric [Hawkins][,] there is no positive identification as to which individual entered Stanley Moss's room and shot him." However, as previously stated, Elishia, Dextric, and Litsandra each testified that Appellant was the only shooter whom they saw inside the house. Additionally, Dextric specifically testified that, after Appellant shot at him, Appellant left and went to another room and that he heard Appellant walk back past his room on the way out. Litsandra further

8

testified that, after Appellant walked out of her bedroom, she heard more gunshots. Moss was found with a gunshot wound shortly after that.

McDonald testified that, when Appellant and his passenger went to the door of the house, "they" kicked it in. However, in a police interview, McDonald stated that Appellant was the one who kicked down the door. We also note that there is testimony that Elishia's five-year-old son claimed to have stood at the backdoor and talked to another person. None of the other witnesses who were inside the house testified that they saw anyone other than Appellant. The jury was the judge of the credibility of the witnesses and was free to "choose to believe all, some, or none of the testimony presented by the parties." *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

From the testimony to which we have referred, we find that a rational jury could have found that Appellant committed the offense of aggravated assault against Moss. Thus, the evidence was sufficient to support Appellant's conviction. We overrule Appellant's second issue on appeal.

In his third issue on appeal, Appellant complains that he received ineffective assistance of counsel from his court-appointed attorney. Appellant asserts that there are four areas of such ineffective assistance: failure to impeach a State's witness; failure to object to a prior consistent statement; failure to object to certain out-of-court statements; and failure to request a jury instruction following a motion for mistrial.

We review a claim of ineffective assistance of counsel under the *Strickland* standard, which is a two-part analysis that includes a performance prong and a prejudice prong: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to make a showing under either prong of the *Strickland* test defeats a claim

of ineffective assistance of counsel. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010). Appellate review of a defense counsel's performance is highly deferential, and we presume that counsel's actions fell within the wide range of reasonable and professional assistance. *Strickland*, 466 U.S. at 689; *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Walker v. State*, 406 S.W.3d 590, 594 (Tex. App.—Eastland 2013, pet. ref'd).

To overcome this presumption, an appellant's claim of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). Importantly, "[d]irect appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped." *Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). A silent record that provides no explanation for counsel's actions will not overcome the strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Thompson*, 9 S.W.3d at 813–14; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Hayden v. State*, 155 S.W.3d 640, 648 (Tex. App.—Eastland 2005, pet. ref'd). Further, if trial counsel has not had an opportunity to explain the challenged actions, then we will not conclude that those actions constituted deficient performance unless they were so outrageous that no competent attorney would have engaged in them. *See Goodspeed*, 187 S.W.3d at 392; *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003).

The State furnished Appellant with a letter in which the State informed Appellant of the criminal record of various witnesses. Appellant claims that his trial counsel should have impeached certain witnesses with information contained in that letter. The State maintains that the record contains nothing to show that the information would have been admissible under Rule 609 of the Texas Rules of

Evidence. *See* TEX. R. EVID. 609. The record does not affirmatively demonstrate that counsel was ineffective when counsel did not impeach the witnesses. *See Davis v. State*, 533 S.W.3d 498, 515 (Tex. App.—Corpus Christi–Edinburg 2017, pet. ref'd) (no evidence to show crime of moral turpitude).

Appellant also faults trial counsel for his failure to object to the use of prior consistent statements made by McDonald to Detective Rosie Rodriguez. The detective testified about those statements before McDonald testified at trial. Appellant's trial counsel could not have objected to McDonald's prior statements as prior consistent statements at the time that they were offered. The statements were not prior consistent statements as contemplated under Rule 613(c) of the Texas Rules of Evidence. *See* TEX. R. EVID. 613(c). The record does not affirmatively demonstrate that counsel was ineffective when he did not object to the alleged prior consistent statements.

Elishia, Dextric, and Litsandra all testified that, after the shooting stopped, Elishia's young son came through the house saying some version of "My daddy's gone." Appellant contends that his trial counsel should have objected to that testimony. The record does not affirmatively demonstrate that the evidence would not have been admissible as an exception to the hearsay rule, and neither does the record reflect that the statement of the young child would have been testimonial. *See Davis v. Washington*, 547 U.S. 813, 827–29 (2006); *Crawford v. Washington*, 541 U.S. 36, 52, 68 (2004). The record does not affirmatively demonstrate that counsel was ineffective when counsel did not object to the child's statement.

During the trial, the State asked Litsandra how long Appellant had lived in the house when he was still with Elishia. She responded, "He was -- I don't know the date, but he was released from prison that year, later on in '15, and he stayed there." Appellant's trial counsel moved for a mistrial, and the trial court overruled the motion. Appellant's counsel did not ask for a limiting instruction. Appellant faults

trial counsel for his failure to ask the trial court to give a limiting instruction to the jury. Trial counsel has not had the opportunity to explain any tactical decision that counsel might have made when he did not ask for the instruction. The State argues that trial counsel could have decided to minimize any adverse effect that the testimony might have had rather than to emphasize it. We agree with that. We observe that oftentimes it is the wiser lawyer who tempers knowledge of the rules with wisdom to know when to assert them.

In any event, as to all of Appellant's ineffective-assistance-of-counsel complaints, the record in this case is silent as to any potential trial strategy that trial counsel may have employed. Although Appellant filed a motion for new trial, he did not assert his claim of ineffective assistance in the motion for new trial. Accordingly, Appellant's trial counsel has not had an opportunity to explain his trial strategy. Therefore, on this record, Appellant has failed to overcome the strong presumption of reasonable assistance. *See Thompson*, 9 S.W.3d at 814.

In the absence of trial counsel being afforded the opportunity to explain his trial strategy, and based on our review of the record, we cannot conclude that Appellant's trial counsel's actions were so outrageous that no competent attorney would have engaged in them. *See Goodspeed*, 187 S.W.3d at 392. Because Appellant failed to meet his burden on the first prong of *Strickland*, we need not consider the requirements of the second prong. *Lopez v. State*, 343 S.W.3d 137, 144 (Tex. Crim. App. 2011). We overrule Appellant's third issue on appeal.

We now address Appellant's fourth issue on appeal wherein he claims that the trial court erred when it did not grant trial counsel's request for mistrial when Litsandra referenced the fact that Appellant had been in prison before. Appellant's trial counsel promptly moved for a mistrial, but the trial court overruled it. Trial counsel did not request an instruction to disregard the statement, and no such instruction was given to the jury.

With some exceptions in extreme cases, the general rule is that any error that results from placing an extraneous offense before the jury in violation of a motion in limine can be cured by an instruction to disregard. *Lusk v. State*, 82 S.W.3d 57, 61 (Tex. App.—Amarillo 2002, pet. ref'd). Under circumstances such as these where trial counsel moves for a mistrial without requesting an instruction to disregard, "[f]ailure to request the court to instruct the jury to disregard the inadmissible evidence results in waiver of the alleged error where the instruction would have cured the error." *Thomas v. State*, 137 S.W.3d 792, 797 (Tex. App.—Waco 2004, no pet.). Appellant has waived the issue on appeal.

Even if we were to consider the issue, Appellant cannot prevail. If Appellant had requested the instruction to disregard, and if the trial court had given it, we would assume under the facts of this case that the jury followed it. There is nothing in the record to reflect that this is one of those extreme cases where the evidence was such that it was calculated to inflame the jurors' minds to such an extent that it would be impossible for the jurors to remove that influence. *Waldo v. State*, 746 S.W.2d 750, 752–53 (Tex. Crim. App. 1988).

We overrule Appellant's fourth issue on appeal.

Finally, we will discuss Appellant's fifth issue on appeal in which he maintains that the trial court erred when it assessed court-appointed attorney's fees against him. The State agrees, as do we.

When a trial court has found that a defendant is indigent, he is presumed to remain indigent for the remainder of the proceedings unless there has been a material change in the defendant's financial circumstances. TEX. CODE CRIM. PROC. ANN. art. 26.04(p) (West Supp. 2020). Except upon evidence that there has been a material change since the indigency finding and that an appellant is no longer indigent, the trial court cannot assess court-appointed attorney's fees against a defendant. *Cates v. State*, 402 S.W.3d 250, 251–52 (Tex. Crim. App. 2013). Before trial,

Appellant signed an affidavit of indigence and was subsequently appointed counsel to represent him. There is no suggestion in the record that the trial court found any material change in Appellant's financial circumstances, and we sustain Appellant's fifth issue on appeal.

We modify the judgments of the trial court and the bill of cost to delete the assessment of court-appointed attorney's fees as costs to be borne by Appellant. As modified, we affirm the judgments of the trial court.


JIM R. WRIGHT
SENIOR CHIEF JUSTICE


December 31, 2020

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J,
Trotter, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.